**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| FRANK L., <br><br> Plaintiff, <br><br> v. <br><br> KILOLO KIJAKAZI, ACTING COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | Civ. No. 22-06506 (GC) <br><br> **MEMORANDUM OPINION** |

**CASTNER, District Judge**

    **THIS MATTER** comes before the Court upon Plaintiff Frank L.'s[1] appeal from the final decision of the Commissioner of the Social Security Administration, denying Plaintiff's application for a period of disability and disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 423, *et seq.* The Court has jurisdiction to review this matter pursuant to 42 U.S.C. § 405(g) and reaches its decision without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, and other good cause shown, the Court **AFFIRMS** the Commissioner's decision to deny Plaintiff social security benefits.

**I.    BACKGROUND**

    **A.    PROCEDURAL HISTORY**

    On December 11, 2020, Plaintiff filed an application for disability insurance benefits,

---

[1] The Court identifies Plaintiff by first name and last initial pursuant to D.N.J. Standing Order 2021-10.

alleging disability beginning on February 24, 2020. (Administrative Record ("AR")[2] 49, 140-141.) On July 22, 2021, an Administrative Law Judge conducted an Administrative Hearing. On August 20, 2021, the ALJ decided that Plaintiff was not disabled. (*Id.* at 12-47, 67-77.) On September 1, 2022, the Appeals Council denied Plaintiff's request for review. (*Id.* at 1-6.) On November 7, 2022, Plaintiff appealed the ALJ's decision to this Court. (*See* ECF No. 1.) On January 4, 2023, the Commissioner filed the Administrative Record. (*See* ECF No. 4.) On June 20, 2023, Plaintiff filed his moving brief pursuant to Local Civil Rule 9.1. (*See* ECF No. 14.) On August 30, 2023, the Commissioner filed opposition (*see* ECF No. 17), and Plaintiff did not reply.

### B.  FACTUAL BACKGROUND

Plaintiff is a fifty-year-old male born in April 1973. (AR 140.) He previously worked as a schoolteacher and assistant principal. (*Id.* at 36.) Plaintiff worked up until February 2020, when his breathing issues made working too difficult.[3] (*Id.* at 37-38.)

Plaintiff has received treatment for various conditions, including asthma, chronic bronchitis, and myriad of orthopedic problems such as neck pain and stiffness, lower back pain, and shoulder pain. (*Id.* at 37-41.) He is allegedly also sensitive to several environmental stressors, such as mildew, mold, aerosols, candles, and animals. (*Id.* at 38.) Plaintiff is prescribed ProAir HFA Aerosol Solution, DuoNeb, Xopenex, Zetonna, Montelukast, Xyzal, Patanol, Aspirin, Triamcinolone Acetonide, Fasenra, Budesonide, Spiriva, Daliresp EpiPen, Nexium, Strovite, Prednisone Xolair, and Bretzri. (*Id.* at 38-39, 308-09, 335, 428.)

---

[2]  The Administrative Record is available at ECF No. 4-1 through 4-7. For record cites, page numbers refer to the internal pagination of the Administrative Record. Page numbers for brief cites (*i.e.*, "ECF Nos."), by contrast, refer to the page numbers stamped by the Court's e-filing system and not the internal pagination of the parties.

[3]  Plaintiff attempted to return to work in June 2020, but Plaintiff alleges that by August 24, 2020, his severe asthma and bronchitis caused him to stop working. (AR 37.)

The ALJ engaged vocational expert, or "VE," James Doldner, Ph.D. The VE testified that Plaintiff could perform his past work as an assistant principal and schoolteacher as generally performed,[4] but not as actually performed by Plaintiff, given his restrictions.[5] (*Id.* at 42.) The VE testified that there is sufficient work available for someone with similar age, education, and work experience as Plaintiff's at the light[6] level such as: fast food worker, [Dictionary of Occupational

---

[4] "Pursuant to S.S.R. 82–61, if a claimant 'cannot perform the excessive functional demands and/or job duties actually required in the former job but can perform the functional demands and job duties as generally required by employers throughout the economy, the claimant should be found to be 'not disabled.'" *Garibay v. Comm'r of Soc. Sec.*, 336 F. App'x 152, 159-60 (3d Cir. 2009)

[5] The ALJ posed the following hypothetical restrictions to the VE:

> First hypothetical is at the light exertional level, with the following limitations, never climb ropes, ladders, or scaffolds. Never be exposed to unprotected heights or hazardous machinery. Occasionally climb stairs and ramps. Never crawl or kneel. Occasionally stoop and crouch. Frequent reaching, frequently balance, and never have exposure to extremes and environmental conditions, or concentrated pulmonary irritants.
>
> [(AR 43.)]

[6] The Social Security Administration "determine[s] the physical exertion requirements of work in the national economy" by "classify[ing] jobs as sedentary, light, medium, heavy, and very heavy." Accordingly, "light work"

> involves lifting no more than 20 pounds at a time with frequent lifting or carrying objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.
>
> [20 C.F.R. § 404.1567(b).]

3

Titles ("DOT")] Code 311.472-010; cashier II, DOT Code 211.462-010; or officer helper, DOT Code 239.567-010. (*Id.* at 43.) The ALJ solicited testimony that, with the same restrictions, Plaintiff also could not perform past relevant work transferable at the sedentary level.[7] (*Id.* at 44.) The VE testified, however, that Plaintiff could perform other sedentary work — in the form of table worker, DOT Code 739.687-182; food and beverage order clerk, DOT Code 209.567-014; and dowel inspector, DOT Code 669.687-014 — and that these positions are sufficiently available in the national economy. (*Id.*)

### C. THE ALJ'S DECISION

On August 20, 2021, the ALJ found that Plaintiff is not disabled. (*Id.* at 15-25.) The ALJ found that Plaintiff met the insured status requirements under the Social Security Act through December 31, 2025. (*Id.* 17.)

The ALJ set forth the Social Security Administration's five-step sequential process for determining whether an individual is disabled. (*Id.* at 15-17.) At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity[8] since February 24, 2020, the alleged disability onset date. (*Id.* at 17.)

---

[7] According to the Social Security Administration, "sedentary work"

> involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

[20 C.F.R. § 404.1567(a).]

[8] "Substantial gainful activity is work activity that is both substantial and gainful." 20 C.F.R. § 404.1572. Substantial work activity "involves doing significant physical or mental activities. [A claimant's] work may be substantial even if it is done on a part-time basis or if he do[es] less,

4

At step two, the ALJ found that Plaintiff had these severe impairments: degenerative disc disease with radiculopathy, a partial tendon tear with rotator cuff tendinosis of the right shoulder, asthma, and obesity. (*Id.* at 18.) The ALJ found the following impairments non-severe: hypertension, hyperlipidemia, GERD, or sinusitis. (*Id.*)

At step three, the ALJ determined, after closely examining Plaintiff's medical conditions, that none of Plaintiff's impairments, or combination of impairments, met or medically equaled the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Appendix 1"). (*Id.*) The ALJ next found that Plaintiff possessed the residual functional capacity to perform light work with detailed limitations.[9] (*Id.* at 19.)

At step four, the ALJ found that Plaintiff could perform past relevant work ("PRW") as generally performed, because Plaintiff's actual work as an assistant principal and secondary schoolteacher exceeded the level of its general activity (light work but actually performed by Plaintiff at the medium level). (*Id.* at 23.) But since Plaintiff has other limitations preventing him from performing all the requirements of light work,[10] the ALJ agreed with the VE that there are many jobs in the national economy that Plaintiff can perform, considering his age, education, work

---

get[s] paid less, or ha[s] less responsibility than when he worked before." *Id.* § (a). "Gainful work activity is work activity that [the claimant] do[es] for pay or profit. Work activity is gainful if it is the kind of work usually done for pay or profit, whether or not a profit is realized." *Id.* § (b).

[9] These limitations consist of: Plaintiff "can never climb ropes, ladders or scaffolds; never be exposed to unprotected heights or hazardous machinery; occasionally climb stairs and ramps; never crawl or kneel; occasionally stoop and crouch; frequent reaching; frequently balance; and never have exposure to extremes in environmental conditions or concentrated pulmonary irritants." (AR 19.)

[10] Pursuant to 20 C.F.R. § Pt. 404, Subpt. P, App. 2, § 202.21, if a claimant has a RFC to perform a full range of light work, then a finding of "not disabled" is required. However, here, the ALJ found that Plaintiff's ability to perform all or substantially all of the requirements of light work was impeded by additional limitations. (AR 24.) But given these restrictions, other jobs existed in the national economy that Plaintiff could perform. (*Id.*)

5

experience, and residual functional capacity — for example, a fast-food worker, cashier II, and office helper. (*Id.* at 23-24.) The ALJ accordingly found that Plaintiff had not been disabled from February 24, 2020, through the date of the decision. (*Id.*)

In making these determinations, the ALJ evaluated several sources of information, including Plaintiff's own allegations, Plaintiff's medical providers, and state medical consultants. For instance, in progress notes from Shore Pulmonary, Jeffrey Miskoff, D.O., stated that Plaintiff's asthma was mild, intermittent, and uncomplicated. (AR 389, 394, 399.) In addition, results from Plaintiff's exams at Allergy, Asthma, and Clinical Immunology state that he had "normal heart rate and rhythm. There is no stridor, crackles, wheezes, or accessory muscle use. No pain with respiration." (*Id.* at 445.) Plaintiff's progress notes from Allergy, Asthma, and Clinical Immunology also stated that he has "moderate/severe persistent asthma, uncomplicated." (*See, e.g.*, *id.* at 412-13, 416-17, 418-19, 421-22, 443.) Mary Georgy, M.D., one of Plaintiff's doctors from Allergy, Asthma, and Clinical Immunology, also completed a report indicating that Plaintiff can stand and walk for more than four hours and could sit without limitation. (*Id.* at 365.) Dr. Georgy also opined, which the ALJ found not persuasive, that Plaintiff could lift and carry more than five pounds but less than ten pounds, and that Plaintiff would require two or more sick days every month. (*Id.*)

The ALJ also considered the report of Kevin H. Weiner, M.D, Plaintiff's pain management doctor. (AR 20.) Dr. Weiner determined that Plaintiff was disabled based on his finding that Plaintiff's asthma was uncontrolled. The ALJ found the report unpersuasive as Dr. Weiner is not a pulmonologist. (*Id.* at 22-23, 368-377.) And, Dr. Weiner opined that Plaintiff could only stand or walk for less than one hour per day, sit for less than two hours per day, carry less than ten pounds for one-third of an eight-hour day, and lift and carry less than five pounds for two-thirds of an

eight-hour day. (*Id.* at 368.) However, Dr. Weiner's opinion was inconsistent with that of Dr. Georgy's.

Finally, the ALJ considered evidence from a state medical consultant Francky Merlin, M.D. (*Id.* at 335.) Dr. Merlin opined that Plaintiff had no wheezing, rales, or rhonchi, and Plaintiff's pulmonary function test was not close to the listing level. (*Id.* at 336.) Dr. Merlin further opined that Plaintiff's grasping and manipulative strength were not impaired, and that he had five out of five motor strength in all his extremities. (*Id.*)

## II.  LEGAL STANDARD

### A.  DISABILITY DETERMINATION

An individual is "disabled" and therefore eligible for disability insurance benefits if she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). The individual's impairment must be severe to the point that the individual cannot engage in his previous work or in "any other kind of substantial gainful work which exists in the national economy," *i.e.*, work that exists in significant numbers either in the region where such individual lives or in several regions of the country. 42 U.S.C. § 423(d)(2)(A); *Plummer v. Apfel*, 186 F.3d 422, 427-28 (3d Cir. 1999). A physical or mental impairment is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

The Commissioner employs a five-step sequential evaluation process for disability claims. *See* 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proof for the first four steps of

7

the analysis, and the burden shifts to the Commissioner for the fifth step. *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91-92 (3d Cir. 2007); *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004).

First, a claimant must not have engaged in substantial gainful activity since the alleged disability onset date. 20 C.F.R. § 404.1520(a)(4)(i), (b). Second, the Commissioner considers "the medical severity of [the claimant's] impairment(s)." *Id.* § 404.1520(a)(4)(ii). The claimant must have a "medically determinable impairment" or combination of impairments severe enough to limit the claimant's ability to perform basic work activities for a continuous period of at least twelve months. *Id.*; *id.* § 404.1509. The claimant bears the burden of establishing the first two requirements, and failure to satisfy either automatically results in denial of benefits. *Bowen v. Yuckert*, 482 U.S. 137, 146-47 n.5 (1987). If the claimant satisfies his burden at steps one and two, she proceeds to the third step. At step three, the Commissioner considers the "medical severity of [the claimant's] impairment(s)." 20 C.F.R. § 404.1520(a)(4)(iii). The impairment or impairments must meet or equal a listing in Appendix 1 of C.F.R. Part 404, Subpart P. *Id.* § 404.1520(d). The impairment or impairments are "medically equivalent to a listed impairment . . . if [they are] at least equal in severity and duration to the criteria of any listed impairment." *Id.* § 404.1526(a). If the claimant is able to make a sufficient showing at step three, he is deemed disabled. *Id.* § 404.1520(a)(iii).

However, if the claimant fails to make a sufficient showing at the third step, the analysis proceeds to an evaluation of the claimant's residual functional capacity and past relevant work at the fourth step. *Id.* § 404.1520(a)(4)(iv). Residual functional capacity is the most the claimant can do in a work setting despite his limitations. *Id.* § 404.1545(a)(1). The Commissioner "assess[es] [the claimant's] residual functional capacity based on all the relevant evidence in his case record," and "consider[s] all of [the claimant's] medically determinable impairments,"

including ones that are not "severe" pursuant to §§ 4041520(c), 404.1521, and 404.1523. *Id.* § 404.1545(a)(1)-(3). The Commissioner assesses residual functional capacity based on "all of the relevant medical and other evidence." *Id.* § 404.1545(a)(3). Past relevant work is "work that [the claimant] ha[s] done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do it." *Id.* § 404.1560(b)(1). "The claimant bears the burden of demonstrating an inability to return [his] past relevant work." *Plummer*, 186 F.3d at 428 (citing *Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir. 1994)).

If the claimant is incapable of performing his past relevant work, the analysis proceeds to the fifth and final step. *See Plummer*, 186 F.3d at 428; 20 C.F.R. § 404.1520(a)(4)(iv)-(v). At step five, the claimant must be unable to adjust to other work in light of his residual functional capacity, age, education, and work experience to be considered disabled. *See id.* § 404.1520(a)(4)(v), (g). Before denying a claim at step five, the Commissioner must show that the claimant is capable of other work existing "in significant numbers in the national economy." *Id.* § 404.1560(c)(2); *see also Poulos*, 474 F.3d at 92.

### B. STANDARD OF REVIEW

District courts may "affirm[], modify[], or revers[e] the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). In reviewing the decision, the court determines whether the ALJ's findings are supported by substantial evidence. *See id.*; *see also Poulos*, 474 F.3d at 91. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Reefer v. Barnhart*, 326 F.3d 376, 379 (3d Cir. 2003) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a

9

preponderance of the evidence." *Ginsburg v. Richardson*, 436 F.2d 1146, 1148 (3d Cir. 1971) (internal quotation marks and citation omitted).

The district court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992). Thus, this limitation on a reviewing court's discretion applies "even if [it] would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). The Court must "review the record as a whole to determine whether substantial evidence supports a factual finding." *Zirnsak v. Colvin*, 777 F.3d 607, 610 (3d Cir. 2014) (citing *Schaudeck v. Comm'r*, 181 F.3d 429, 431 (3d Cir. 1999)). "Since it is apparent that the ALJ cannot reject evidence for no reason or for the wrong reason, an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper." *Cotter v. Harris*, 642 F.2d 700, 706-07 (3d Cir. 1981) (internal citation omitted).

## III.  DISCUSSION

Based on the Court's review of the ALJ's decision, and the Administrative Record submitted by the Commissioner, the Court finds good cause to affirm the Commissioner's finding that Plaintiff is not disabled. In reaching a decision, an ALJ must evaluate the evidence and explain the reasons for accepting or rejecting evidence. *Cotter*, 642 F.2d at 706. Here, the ALJ provided sufficient reasoning for the Court to determine that his findings are supported by substantial evidence. In support of his appeal, Plaintiff advances one principal argument. Plaintiff argues that there is not substantial evidence to support the proposition that Plaintiff retained the residual functional capacity to perform his PRW. (ECF No. 14 at 16-22.) [11]

---

[11]  Plaintiff appears to challenge that he was uncapable of performing both his past relevant work and light work. (AR 16-21.)

### A.   RESIDUAL FUNCTIONAL CAPACITY

#### 1.   *SUBJECTIVE COMPLAINTS AND MEDICAL EVIDENCE*

Plaintiff first argues that his own allegations combined with medical evidence suggest that he did not have the residual functional capacity for his PRW. (*Id.* 17-18.)

First, regarding Plaintiff's subjective allegations, pursuant to 20 C.F.R. § 404.1529, the ALJ is required to use a two-step process to evaluate the impairment-related symptoms alleged by Plaintiff. At step one, a medically determinable physical or mental impairment must be present. 20 C.F.R. § 404.1529. Plaintiff must demonstrate a medically determinable impairment, however, by objective medical evidence. Under federal regulations, a medically determinable impairment

> must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques. Therefore, a physical or mental impairment must be established by objective medical evidence from an acceptable medical source. **[The Social Security Administration] will not use [a claimant's] statement of symptoms, a diagnosis, or a medical opinion to establish the existence of an impairment(s).** After [the Social Security Administration] establishes that [the claimant] ha[s] a medically determinable impairment(s), then [its officials] determine whether [the claimant's] impairment(s) is severe.
>
> [20 C.F.R. § 404.1521 (emphasis added); *see* 42 U.S.C. § 423(d)(3).]

11

"Objective medical evidence means signs,[12] laboratory findings,[13] or both." *Id.* § 404.1502(f). Once a medically determinable impairment is shown, the ALJ must then evaluate intensity, persistence, and limiting effect of the impairment. 20 C.F.R. § 404.1529. Moreover, § 404.1529 sets forth various ways in which an ALJ can consider the intensity, persistence, and limiting effect(s) such as objective medical evidence, other medical source evidence, daily activities, treatment, or medication,[14] and any other relevant factor that concerns the claimant's functional limitations.

---

[12]   According to the regulations, "signs"

> means one or more anatomical, physiological, or psychological abnormalities that can be observed, apart from [the claimant's] statements (symptoms). Signs must be shown by medically acceptable clinical diagnostic techniques. Psychiatric signs are medically demonstrable phenomena that indicate specific psychological abnormalities, e.g., abnormalities of behavior, mood, thought, memory, orientation, development, or perception, and must also be shown by observable facts that can be medically described and evaluated.

[20 C.F.R. § 404.1502(g).]

[13]   The regulations define "laboratory findings" as

> [o]ne or more anatomical, physiological, or psychological phenomena that can be shown by the use of medically acceptable laboratory diagnostic techniques. Diagnostic techniques include chemical tests (such as blood tests), electrophysiological studies (such as electrocardiograms and electroencephalograms), medical imaging (such as X-rays), and psychological tests.

[20 C.F.R. § 404.1502(c).]

[14]   Plaintiff briefly argues that the ALJ failed to properly account for the "extensive array of medications" that Plaintiff is on, or the side effects of these medications. (ECF No. 14 at 21-22.) However, this is contrary to the record. First, the ALJ cites several of Plaintiff's medications in his decision. (*See* AR 22.) Plaintiff cites no caselaw, nor is the Court aware of any, suggesting that an ALJ must include every medication in his or her opinion. Second, Plaintiff fails to cite which side-effects the ALJ failed to consider, if any, and whether Plaintiff provided the ALJ with

When determining whether to give weight to subjective complaints under 20 C.F.R. § 404.1529, the ALJ must set forth his reasons for doing so. *See Cotter*, 642 F.2d at 706-07 (stating that an "explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper"); *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 122 (3d Cir. 2000) ("Similar to the medical reports, the ALJ must also consider and weigh all of the non-medical evidence before him.").

Here, the ALJ properly followed § 404.1529 and set forth his reasons for not giving weight to Plaintiff's subjective complaints. For instance, the ALJ stated:

> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.
>
> As for the claimant's statements about the intensity, persistence, and limiting effects of his or her symptoms, they are inconsistent because they fail to support a finding of disability.

[(AR 20.)]

The ALJ then reviewed the entire record of medical evidence, and carefully noted why he rejected or accepted each of Plaintiff's subjective complaints in comparison to objective medical evidence. For instance, the ALJ noted Plaintiff's Hearing testimony that Plaintiff has difficulty

---

evidence that he was suffering from side effects. *See Grandillo v. Barnhart*, 105 F. App'x 415, 419 (3d Cir. 2004) (stating that "[t]he mere fact that [plaintiff] was taking medication known to induce adverse side-effects in some small percentage of patients did not require the ALJ to assume [plaintiff] actually experienced those side effects" and holding that claimant has "not cited to any medical evidence demonstrating that she suffered adverse side effects from her medication ... her own conclusory statements [do] not establish a sufficient ongoing struggle with any side-effects to undermine the ALJ's determination"). The only side-effects that Plaintiff cites are subjective and conclusory. (AR 21 (citing AR 180).) Therefore, the ALJ did not err.

13

breathing; he uses his nebulizer three to four times a day and has a rescue inhaler; he has difficulty walking and gets out of breath; he has chronic bronchitis which is tied to his severe asthma; he is frequently treated with steroids and other injections for his asthma and allergies; he is triggered by aerosols, candles, animals, dust, mold, and high humidity; he needs to use an emergency inhaler after walking one block; and his respiratory issues are getting worse every year even with medication. (*Id.*) The ALJ also noted Plaintiff's testimony regarding his mobility issues arising from his neck, shoulder, and back. (*Id.*)

The ALJ did not find Plaintiff's statements about his intensity, persistence, and limiting effects of his symptoms to be consistent with the record as a whole. (*Id.*) For instance, Plaintiff was under the care of Dr. Weiner since October 20, 2020, and Dr. Weiner noted that Plaintiff complained of neck, thoracic, and lower back pain, and that Plaintiff claimed he could not sit or stand for a prolonged period. (*Id.*) Plaintiff also showed signs of limited spine movement without paresthesia going down to his bilateral extremities, several disc herniations, right shoulder pain, and difficulty performing overhead activities. (*Id.* at 20-21.) However, the ALJ noted the absence of evidence indicating that Plaintiff was a candidate for physical therapy, surgical intervention, or any other intensive care during this time. (*Id.* at 21.) Nor was there record evidence suggesting that Plaintiff needed immobilization cortisone injections, recurrent emergency room visits, impatient hospital visits, or surgical intervention. (*Id.*) The ALJ noted that Plaintiff's treatment had been "relatively conservative." (*Id.*)

The ALJ also considered Dr. Merlin's opinions. Dr. Merlin noted that Plaintiff complained of neck, right shoulder, and lower back pain and that Plaintiff had numbness in his hands, but there was no evidence suggesting that Plaintiff had sensory or strength deficits in his extremities or that Plaintiff's grasping and manipulative functions were impaired. (*Id.*) Indeed, Plaintiff conveyed

14

to Dr. Merlin that he wanted to "be less dependent on oral medications and prescribed with topical lidocaine patches." (*Id.*)

The ALJ further considered medical evidence from Dr. Merlin and Dr. Georgy, Plaintiff's treating pulmonologist, that Plaintiff suffered from asthma, but the ALJ found that Plaintiff's lungs were normal with no rales, wheezes, or rhonchi, and that Plaintiff's pulmonary function test did not meet the required listing level. (*Id.* 22.) Plaintiff's medical records also stated that his asthma was "uncomplicated." (*Id.*) Dr. Georgy noted that Plaintiff had severe persistent asthma, but that he could stand and walk for more than four hours, sit without limitation, and lift more than five, but less than 10 pounds, which is inconsistent with a finding of disability and inconsistent with Plaintiff's testimony. (*Id.*) The ALJ also noted that there was no evidence in the entire record suggesting that Plaintiff was hospitalized, either through emergency room visits or impatient admission, during the period in question. (*Id.*)

Since Plaintiff's subjective complaints were contradicted by objective medical evidence, and the ALJ provided substantial evidence for why he rejected Plaintiff's subjective complaints, the ALJ did not err by finding that Plaintiff could perform his PRW as generally performed, or in the alternative, light work such as a fast-food worker, cashier II, or an office helper. *See Harkins v. Comm'r of Soc. Sec.*, 399 F. App'x 731, 735 (3d Cir. 2010) ("[A]n ALJ may nonetheless reject a claim of disabling pain where he 'consider[s] the subjective pain and specif[ies] his reasons for rejecting these claims and support[s] his conclusion with medical evidence in the record.'"); *Moncur v. Comm'r of Soc. Sec.*, Civ. No. 17-4811, 2018 WL 5729910, at *5 (D.N.J. Nov. 2, 2018) (noting an ALJ's authority to reject the plaintiff's subjective limitations when contradicted by objective medical evidence and lay evidence); *Diaz v. Comm'r of Soc. Sec.*, Civ. No. . 07-2276, 2008 WL 2668812, at *4 (D.N.J. June 27, 2008) (same).

15

### 2. LIGHT RESIDUAL FUNCTIONAL CAPACITY

Plaintiff next argues that the ALJ erred by finding that Plaintiff had a light residual functional capacity as the ALJ allegedly ignored competent and unanimous medical evidence that Plaintiff could not meet the demands of light work. (ECF No. 14 at 20.) At its core, Plaintiff's argument is that the ALJ improperly rejected medical evidence.

After March 27, 2017, a "medical opinion" is defined as "a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions in the following abilities." *Compare* 20 C.F.R. § 404.1513(a)(2) (listing the following categories of abilities: "ability to perform physical demands of work activities," *id.* § (a)(2)(i); "ability to perform mental demands of work activities," *id.* § (a)(2)(ii); "ability to perform other demands of work," *id.* § (a)(2)(iii); and "ability to adapt to environmental conditions," *id.* § (a)(2)(iv)), *with* 20 C.F.R. § 404.1527(a)(1) (defining "medical opinion" for applications filed prior to Mar. 27, 2017).

Social Security Administration regulations instruct that as of March 27, 2017, an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s), including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a). "The most important factors [the ALJ will] consider when [he] evaluates the persuasiveness of medical opinions and prior administrative medical findings are supportability[15] and consistency.[16]" *Id.* (citing *id.* § (c)(1)-(2)). The other factors concern

---

[15] In considering the "supportability" of a medical opinion, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1).

[16] "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more

16

the physician's relationship with the claimant (considering the length, purpose, and extent of the treatment relationship, whether the medical professional conducted examinations, and the frequency of any examinations), *id.* § (c)(3)(i)-(v); whether the medical professional is a specialist in his or her field, *id.* § (c)(4); and other miscellaneous factors, *id.* § (c)(5). Moreover, the ALJ is "not required to articulate how [he] considered each medical opinion or prior administrative medical finding from one medical source individually." 20 C.F.R. § 404.1520c(b)(1).

Here, as discussed in detail above, the ALJ engaged with the treatment records of Drs. Weiner, Georgy, and Merlin, and explains the supportability and consistency of the objective medical evidence underlying his opinion. (*See* AR 22-23.) Dr. Georgy's opinion was partially persuasive, except for Dr. Georgy's opinion about Plaintiff's ability to lift and carry and suggested time off which the ALJ found was unpersuasive, because Dr. Georgy's own records indicated that Plaintiff had no loss of strength in his extremities on repeat examinations. Moreover, the ALJ found that Dr. Weiner was not persuasive because Dr. Weiner's opinion was contradicted by other evidence in the record. (*Id.* ("In particular, the opinions limiting the claimant to less than one hour of standing/walking and less than two hours of sitting in an eight-hour workday are extreme as the claimant testified that he gets pain in his back only after prolonged standing or sitting. Moreover, Dr. Weiner's opinions are in stark contrast to the opinions of Dr. Georgy where she opines that the claimant can stand/walk for more than four hours, with no limitations on sitting.").)

"Although an ALJ, as the fact finder, must consider and evaluate the medical evidence presented, '[t]here is no requirement that the ALJ discuss in its opinion every tidbit of evidence included in the record." *Diciano v. Comm'r of Soc. Sec.*, Civ. No. 18-17383, 2019 WL 6696523,

---

persuasive the medical opinion(s) or prior administrative filings will be." 20 C.F.R. § 404.1520c(c)(2).

17

at *2 (D.N.J. Dec. 9, 2019) (citing *Fargnoli v. Massanar*, 247 F.3d 34, 42 (3d Cir. 2001); *Hur v. Barnhart*, 94 F. App'x 130, 133 (3d Cir. 2004)) (affirming decision of ALJ).

Here, the ALJ thoroughly reviewed the medical evidence supporting Plaintiff's position, provided sufficient justification for the weight that he gave the relevant medical evidence, and determined Plaintiff's residual functional capacity. In that determination, the ALJ considered objective yet contradictory medical evidence, not his own interpretation of lay testimony as Plaintiff argues. (*See* ECF No. 14 at 20.) As the ALJ provided substantial evidence as to why he arrived at his residual functional capacity decision following the evaluation of objective medical evidence, the ALJ did not err in his residual functional capacity determination. *See Kelly P. v. Kijakazi*, Civ. No. 20-14535, 2023 WL 5321033, at *21 (D.N.J. Aug. 18, 2023) (finding that the ALJ properly discredited objective medical evidence when it was contradicted by other objective medical evidence in the record).

## IV.   CONCLUSION

For the foregoing reasons, and for good cause shown, the Commissioner's decision to deny Plaintiff benefits shall be affirmed. An appropriate Order follows.

Dated: November 28th 2023

GEORGETTE CASTNER
United States District Judge